The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before former Deputy Commissioner Lawrence B. Shuping, Jr., along with the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Upon reconsideration of the evidence of record, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
************
The Full Commission find as fact and conclude as matters of law the following, which were contained in a pretrial agreement entered into by the parties at the hearing on October 28, 1996 as:
STIPULATIONS
1. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. That these three Industrial Commission files should be consolidated for hearing.
3. At all relevant times the parties were subject to and bound by the provisions of the Workers' Compensation Act and the employer-employee relationship existed between the plaintiff and the defendant-employer.
4. PCA Solutions, Inc., was the servicing agent on the risk at the time of plaintiff's compensable hernia in January 1994, Industrial Commission File No. 415871. The coverage period for PCA Solutions, Inc. terminated on February 28, 1995.
5. Key Risk Management Services, Inc., was the servicing agent on the risk at the time of plaintiff's alleged recurrent hernia on March 7, 1995, and at the time of plaintiff's alleged recurrent hernia in March of 1996.
************
Based upon the entire record of evidence, the Full Commission makes the following:
FINDINGS OF FACT
1. Plaintiff is an unemployed, 53 year old married male, who is currently receiving Social Security Disability benefits and in addition to his four prior umbilical hernias suffers from diabetes melitis and rheumatoid arthritis. Plaintiff went no further than the fourth grade and is functionally illiterate. Plaintiff intellectually functions in the mild range of mental retardation and because of his mental retardation would have difficulty with instructions of a moderate level of difficulty or sustaining attention to perform simple repetitive tasks as well as difficulty tolerating the stress and pressures associated with daily work activity. His job skills are limited to ones learned in the rubber industry, where he worked for twenty years, or the majority of his adult life, which requires the type of lifting, pushing and pulling involving strenuous use of his abdominal muscles that he can no longer do because of his multiple hernias.
2. For the last fourteen and a half years plaintiff has worked for defendant-employer in the same industry as an extruder machine operator. As such he was responsible for pushing or pulling needed pallets of rubber to his machine, which weighed from as little as 700 pounds to as much as 1,600 pounds, and for insuring that strips of rubber processed by his machine were tightly wound around an associated basket, which task involved the type of strenuous use of the abdominal muscles prohibited by his multiple hernias.
3. Plaintiff had never experienced a hernia prior to becoming employed by defendant-employer; however, in 1992 he sustained the first of four umbilical hernias, which defendant-employer accepted as compensable, and like the other three subsequent umbilical hernias that are subject of the claims giving rise hereto was the result of pushing or pulling one of the heavy pallets of rubber to his assigned machine. That same year plaintiff underwent corrective surgery repairing his initial umbilical hernia, which was performed by the same general surgeon that repaired each of his four hernias, Dr. Lemaire. Once the hernia was surgically repaired it no longer existed, and as will be addressed further below, the subsequent hernia was therefore a new hernia and not a recurrence of a preexisting hernia. Plaintiff's recovery from surgery was uneventful enabling him to return to his regular extruder operator's job without restriction and to continue regularly working without further problems until January 19, 1994.
4. After his initial hernia repair plaintiff was able to return to his regular extruder machine operator's job and to continue regularly working until sustaining the admittedly compensable January 19, 1994 recurrent umbilical hernia that was subject of a prior Industrial Commission award in I.C. File No. 415871, which again was the result of pushing and pulling an in excess of 1,000 pound pallet load of rubber for his machine. This injury required plaintiff to undergo a second hernia repair by Dr. Lemaire, and after being repaired the hernia no longer existed, again enabling plaintiff to return to his regular extruder machine operator's job.
5. On March 7, 1995, as a direct result of a specific traumatic incident of the work assigned, plaintiff suffered another hernia while attempting to push or pull a 1,000 pound pallet load of rubber. Dr. Lemaire subsequently performed a third umbilical hernia repair, following which the hernia which occurred on March 7, 1995 no longer existed.
6. Plaintiff thereafter returned to work in his previous position as an extruder operator and continued working regularly until on or about March 12, 1996, when he sustained a fourth umbilical hernia as a direct result of a specific traumatic incident of the work assigned, said incident being another attempt to push or pull a pallet of rubber weighing in excess of 1,000 pounds.
7. Because of the multiple hernias that he had experienced while pushing and pulling the pallets of rubber for his assigned extruder machine, defendant-employer promised to provide plaintiff with assistance moving the same pallets after his third hernia; however, help was not always available forcing plaintiff to attempt to move the pallets himself.
Defendant-employer also put down metal sheets on the floor to make the pallets easier to move. However, the metal sheets were not nailed or fastened down and there were underlying spots where the floor was decayed and the steel wheels of the dolly on which the pallets of rubber were placed had a tendency to get hung and become difficult to turn requiring plaintiff to continue to engage in the type of strenuous activities responsible for his earlier hernias.
8. Plaintiff's fourth hernia was again surgically repaired by Dr. Lemaire, after which procedure it no longer existed. As a result of the risk that plaintiff would continue to suffer hernias if he returned to his regular extruder machine operator job he is no longer able to perform that employment, or other employment involving significant physical activity. Plaintiff is not qualified by education or experience to engage in any other type of employment, and is therefore incapable of earning wages in competitive employment.
9. Although plaintiff's March 12, 1996 hernia is not the sole cause of his incapacity to earn wages, that hernia significantly contributed to plaintiff's overall disability.
10. Although in an effort to return plaintiff to work that does not involve lifting, pushing or pulling or other strenuous use of the abdominal muscles defendant-employer has again offered to provide plaintiff with assistance in moving pallets of rubber, it had not previously provided plaintiff with the assistance promised, nor is there any reason to believe they would now by having someone else responsible for moving each and every pallet of rubber needed for plaintiff's machine; therefore, plaintiff would be justified in refusing to accept any purported job offer. Even if a totally separate person was assigned to move each and every one of the pallets of rubber, plaintiff would have remained responsible for insuring that the strips of rubber remained tight on the basket of his assigned machine, which also involved the type of physical activity prohibited because of his continuing risk of umbilical hernias. Whether or not either of the involved physicians approved the so-called "modified" extruder machine operator's job, the same extruder machine operator's job had already been responsible for plaintiff developing four hernias and he would likely have developed another if he attempted to return to it in any fashion because it necessarily involved the type of physical work prohibited by his risk of developing further recurrent umbilical hernias.
11. Although he has attempted to look for the same type of alternate lighter work, it would be futile for him to do so because there is no evidence that such jobs are available for someone of plaintiff's advancing age, limited education, limited intellectual abilities, background, job skills and work experience, which has always been in the rubber industry, and having the physical limitations that he does that prevent him from returning to work in the same industry or any other work involving similar physical activities — much less that plaintiff can obtain work in an open and competitive labor market.
**************
Based on the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On March 7, 1995 plaintiff sustained a hernia as the direct result of a specific traumatic incident of his assigned work. On that date, defendant Key Risk Management Services was the servicing agent on the risk and is therefore responsible for any and all compensation payable to plaintiff. G.S. § 97-2(6).
2. On March 12, 1996, plaintiff sustained a hernia as the direct result of a specific traumatic incident of his assigned work. Id. As the result of his March 12, 1996 hernia, plaintiff is entitled to have defendant Key Risk Management Services pay temporary total disability compensation at the rate of $207.83 per week for the period of March 12, 1996 through the present and continuing until he returns to work or until further order of the Commission. G.S. § 97-29.
3. As the result of his March 12, 1996 hernia, plaintiff is entitled to have defendant Key Risk Management Services pay for all medical expenses. G.S. § 97-25.
4. To the extent that defendant PCA Solutions has paid compensation to or on behalf of plaintiff as a result of the March 7, 1995 injury, defendant Key Risk Management Services shall reimburse defendant PCA Solutions, Inc. in full for all such compensation, including medical expenses. Should a dispute arise as to the amount of said reimbursement, the parties may apply to the Commission for appropriate relief.
************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. In Industrial Commission File Nos. 524833 and 626275, which have been consolidated, defendant Key Risk Management Services shall pay plaintiff temporary total disability compensation at the rate of $207.83 per week for the period of March 12, 1996 and continuing through the present until plaintiff returns to work or until further order of the Commission. Such compensation as has accrued hereunder shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. In Industrial Commission File Nos. 524833 and 626275, which have been consolidated, defendant Key Risk Management Services shall pay for all medical expenses incurred or to be incurred by plaintiff.
3. In Industrial Commission File No. 524833 defendant Key Risk Management Services shall reimburse defendant PCA Solutions, Inc. for all compensation paid to or on behalf of plaintiff, including medical expenses, as a result of the March 7, 1995 injury.
4. A reasonable attorney fee in the amount of twenty-five percent of the accrued compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto. For the balance of his fee the involved servicing agent, Key Risk Management Services, shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
5. Defendant Key Risk Management Services shall bear all costs due this Commission, including reimbursing defendant PCA Solutions, Inc., for the share it paid of the costs of the depositions of Doctors Lemaire and Larson.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
S/ ______________ THOMAS J. BOLCH COMMISSIONER